UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOISE C. SALAUN,<br><br>              Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>              Defendant. | NO. CV 05-08512 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

    Francoise C. Salaun ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") finding that she is not entitled to waiver of recovery of the $34,807.30 in Social Security Disability Insurance ("SSDI") benefits that she was overpaid. Alternatively, she asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on September 14, 2006. For the reasons stated below, the decision of the Commissioner is REVERSED and the waiver of recovery of the overpayment is GRANTED.

**PROCEDURAL HISTORY**

The Agency awarded Plaintiff disability and disability insurance benefits effective May 6, 1991. (Administrative Record "AR" 13). In September 1992, Plaintiff returned to work. (AR 38). The Agency determined that Plaintiff's trial work period ended May 1993. (AR 42). Plaintiff stopped working from December 1995 through September 1996 but subsequently resumed her employment. (AR 36). The Agency determined that Plaintiff was overpaid benefits from the period of January 1994 through December 1995, and from September 1996 through October 1998. (AR 42-43, 249).

Plaintiff filed a request for waiver of overpayment on September 17, 1999. (AR 54-61). On March 11, 2000, her request was denied. (AR 73-74). Plaintiff requested a hearing by an administrative law judge on May 2, 2000. (AR 75). On September 20, 2000, a hearing was held before Administrative Law Judge ("ALJ") Sally C. Reason at which Plaintiff appeared and testified. (AR 13). On October 20, 2000, the ALJ found that Plaintiff received $ 34,807.30 in overpaid benefits, that the Plaintiff was not without fault in causing or accepting the overpayment, and that recovery of the overpayment was not waived. (AR 15). The Appeal Council denied Plaintiff's request for review of the ALJ's decision. (AR 249).

Plaintiff then appealed to the District Court. (AR 249). On May 12, 2003, the agency agreed to voluntarily remand the matter and seek a new hearing before an ALJ. (AR 279). On July 8, 2003, the Appeals Council issued an order vacating the previous ALJ decision. (AR 286).

It also restricted the scope of the new hearing to one issue, i.e., whether Plaintiff was entitled to a waiver of recovery of the $34,807.30 overpayment. (AR 287).

Plaintiff's second hearing was held on June 21, 2004 before the same ALJ, Sally C. Reason. (AR 249). Plaintiff was represented by a lay advocate from Bet Tzedek Legal Services. (Id.). Plaintiff testified for a second time and submitted new documentation. (AR 298-335). In her August 24, 2004 decision, ALJ Reason held that recovery of the overpayment was not waived. (AR 256). On October 21, 2005, the Appeals Council declined to review the ALJ's decision. (AR 232). Plaintiff then filed the instant appeal on December 9, 2005.

**FACTS**

Plaintiff was born July 8, 1946 and was fifty-seven years old at the time of the last hearing. (AR 23, 249). She was born in France and moved to the United States at the age of twenty-six. (AR 174). Plaintiff completed a certificate program in design through the UCLA University Extension in 1984. (Jt. Stip., Exh. 1). Although English is not her first language, Plaintiff testified that she can understand English well. (AR 305). She also declined an interpreter at the hearing. (Id.).

Plaintiff initially became disabled in 1990 when she was diagnosed with breast cancer, underwent a bilateral mastectomy, chemotherapy and radiation treatment. (AR 174). She was awarded benefits in May 1991. (AR 13). Plaintiff returned to work in September 1992. (AR 38). She

was employed through December 1995. (AR 36). She also worked from September 1996 until November 1, 1998 . (AR 47). As discussed below, Plaintiff reported her employment to the Agency numerous times. The Agency eventually determined that Plaintiff was overpaid benefits from January 1994 through December 1995, and from September 1996 through October 1998. (AR 42-43, 249). The Agency then sought to recover the overpayment. (AR 41-43). Plaintiff subsequently reapplied for disability benefits, was found to be disabled, and her benefits resumed in 1999. (AR 317).

**THE ALJ'S DECISION**

In her August 26, 2004 decision, the ALJ found that Plaintiff accepted disability insurance payments that she was not due, that she was not without fault for accepting payments that she knew or could have been expected to know were incorrect, and that recovery of the overpayment was not waived. (AR 256). The ALJ found that Plaintiff should repay the overpayment regardless of her current financial situation. (AR 255).

The ALJ began by noting that "[t]he outcome determinative issue [was] whether the [Plaintiff] was 'at fault' in connection with the overpayment." The ALJ emphasized that she would be evaluating Plaintiff's "actions or lack of actions and determining whether [Plaintiff] satisfie[d] the regulatory criteria for waiver." (AR 250).

The ALJ then evaluated Plaintiff's history and testimony. She noted that Plaintiff has a "graduate" degree,[1] is fluent in English, and "is clearly of strong intellect." (AR 251). Further, the ALJ noted that Plaintiff testified that she had not read her own disability paperwork, in part, because the City of Hope submitted her application on her behalf when she was undergoing cancer treatment. (Id.). The ALJ also summarized Plaintiff's testimony that she did not think the Agency would make a mistake in her benefits amount and that she believed that she would get greater benefits the more she worked and earned. (Id.).

The ALJ recognized that some of the correspondence from the Agency may have caused confusion if "considered in a vacuum," but opined that Plaintiff had the "mental acumen" to discern that the purpose of disability benefits was to aid those who could not work. (Id.). Further, the ALJ acknowledged that Plaintiff made attempts to return benefits when she first returned to work. (Id.). The ALJ found that this was evidence that Plaintiff was aware that she should not receive benefits once employed. (AR 251-52). The ALJ explained that Plaintiff provided very general information to the Agency which made it difficult for the Agency to determine whether Plaintiff's trial work period had begun. (AR 252-53).

The ALJ then held that "[e]ven if [the Agency] was remiss in not acting on or being tardy in its development of the case and was at fault

---

[1] The ALJ incorrectly describes Plaintiff as having a "graduate degree." Plaintiff completed a certificate course through the UCLA University Extension. (AR 251; See Jt. Stip., Exhs. 1 & 4 (describing that the UCLA University Extension course was a certificate program and did not require a college degree until 2004)).

in making the overpayment, this would not relieve [Plaintiff] from liability if she was not otherwise without fault." (AR 253). The ALJ again acknowledged that the Agency sent contradictory letters to Plaintiff (AR 254-55), but since Plaintiff is an "intelligent and well-educated" woman, she knew or should have known that she received incorrect payments. (Id.). As the ALJ found that Plaintiff was not without fault in accepting the overpayment of benefits, her request for waiver of recovery was denied. (AR 255).

## **PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ's decision should be reversed and that her request for waiver of recovery of overpayments should be granted or, in the alternative, that the matter should be remanded. First, she argues that the amount of the overpayment may be incorrect. (Jt. Stip. at 4). Specifically, she contends that there was no notice of the overpayment in the record or any other evidence showing how the overpayment amount was calculated. (Id.). Second, Plaintiff asserts that she is "without fault in connection with the overpayment because she did not accept payments that she either knew or could have been expected to know were incorrect." (Jt. Stip. at 8). She argues that her continued issuance of checks after she reported that she had resumed work led her to believe that she was entitled to the benefits received. (Jt. Stip. at 12). Further, she asserts that the ALJ did not give proper weight to Plaintiff's physical, mental, educational and linguistic limitations in determining whether she was at fault in connection with the overpayment. (Jt. Stip. at 13). Third, Plaintiff contends that recovery of the overpayment would "defeat the purpose of

Title II of the Social Security Act or be against equity and good conscience." (Jt. Stip. at 22). Finally, Plaintiff asserts that the ALJ did not base her decision on substantial evidence in the record. (Jt. Stip. at 24).

**STANDARD OF REVIEW**

The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

\\
\\
\\
\\
\\
\\

**DISCUSSION**

**A.   The Court Finds That Plaintiff Was Without Fault In Connection With The Overpayment**

Section 404(b) of the Social Security Act allows for waiver of recovery of an overpayment of benefits in limited circumstances. Specifically, the regulations provide that there will be no recovery in a case where an overpayment has been made to an individual who is without fault, and "recovery would either defeat the purpose of the Act, or be against equity and good conscience."  20 C.F.R. § 404.506.  In determining a plaintiff's "fault" in receiving and accepting an overpayment of benefits, the Agency considers whether the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> (b) Failure to furnish information which he knew or should have known to be material; or
> (c) With respect to the overpaid individual only, acceptance of payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. 404.507.  The Ninth Circuit has observed:

> '[T]he decision which must be reached in a fault determination is highly subjective, highly dependent upon the state of mind

of the [plaintiff] and the peculiar circumstances of his situation.'

Harrison v. Heckler, 746 F.2d 480, 482 (9th Cir. 1984)(citation omitted). In determining fault, the ALJ must consider all the relevant circumstances, including the plaintiff's age, intelligence, and education. 42 U.S.C. § 404(b); 20 C.F.R. 404.507. The ALJ must also consider the plaintiff's physical and mental condition. 42 U.S.C. § 404(b); 20 C.F.R. 404.507. The burden is on the plaintiff to show she is without fault. McCarthy v. Apfel, 221 F.3d 119, 1126 (2000), cert. denied, 532 U.S. 923, 121 S. Ct. 1361, 149 L. Ed. 2d 290 (2001).

In the instant matter, it is evident that Plaintiff attempted to comply with Agency requests for information and that she believed she was entitled to continuing benefits. As described below, Plaintiff made several reports to the Agency regarding her employment status. Further, the Agency acknowledged that Plaintiff was employed, informed Plaintiff that she was still entitled to benefits, and repeatedly increased her benefits. Thus, the Agency's conduct contributed greatly to Plaintiff's confusion.

Plaintiff resumed work in September 1992. (AR 38). She informed the Agency and returned the benefit checks she received for September and October 1992. (AR 123-28). The Agency informed her that she was still entitled to benefits and she continued receiving benefits throughout her period of employment. (See AR 42, 202). On March 22, 1993, Plaintiff again informed the Agency of her employment. (AR 185-88). On December 30, 1993, Plaintiff filled out a Disability Update

Report which also informed the Agency that she was working. (AR 190-91).

On February 21, 1994, the Agency informed Plaintiff that it was reviewing her disability case to make sure she was still eligible for benefits. (AR 193). The Agency requested that Plaintiff fill out the forms enclosed and provide it with information regarding her illness and treatment. (AR 193-94). On March 7, 1994, Plaintiff filled out a Report of Continuing Disability Interview (presumably in response to the Agency's request) which included detailed information about her employment, including dates, wages, and days worked, from September 1992 through March 1994. (AR 195, 199). In February 1995, Plaintiff received a letter from the Agency informing her that her case had recently been reviewed and that she continued to be eligible for disability benefits. (See AR 202). The February 1995 letter also gave brief descriptions of events that may affect Plaintiff's disability benefits and the trial work period. (Id.).

On November 2, 1995, the Agency increased Plaintiff's benefits to give her credit for her earnings in 1993 and 1994. (Jt. Stip., Exh. 4). On October 31, 1996, the Agency informed Plaintiff that she was due another increase in benefits to give her credit for her earnings in 1995. (Jt. Stip., Exh. 5). Also, in June 1997, the Agency informed Plaintiff that she had been underpaid benefits beginning in November 1991 and that she was entitled to a $7,018.00 reimbursement. (AR 204).

In September 1997, the Agency informed Plaintiff that her case was once again under review and requested more information about her employment. (AR 206). Plaintiff filled out a Report of Work Activity informing the Agency of her employment status the same month. (AR 207). On October 15, 1997, Plaintiff filled out yet another Report of Work Activity form. (AR 28-31).

In June 1998, the Agency informed Plaintiff that they needed to know more about her work. (AR 33). They sent a pamphlet, "Working While Disabled . . . How Social Security Can Help." (Id.) On June 28, 1998, Plaintiff filled out a Work Activity Report which detailed her employment from September 1992 through June 1998. (AR 36-39). On June 30, 1998, the Agency informed Plaintiff that her work history could affect her disability benefits. (AR 41-43). Then, after sending her many contrary notices, the Agency informed Plaintiff on July 18, 1998, that she had not been eligible for benefits from January 1994 through December 1995 and September 1996 and later. (Id.). However, on November 5, 1998, Plaintiff received a letter from the Agency explaining that after reviewing Plaintiff's records, the Agency determined that an increase in benefits were necessary to give Plaintiff credit for her earnings in 1997. (AR 209).

The ongoing communication between Plaintiff and the Agency demonstrates that Plaintiff made reasonable efforts to inform the Agency of her employment status. The Agency, on several occasions, acknowledged Plaintiff's employment status, yet concluded that Plaintiff's disability benefits should continue. (AR 193, 206). On at least two occasions, the Agency increased her benefits to "credit her

earnings." (Jt. Stip., Exhs. 4 & 5).  Even after the overpayment was determined, the Agency sent Plaintiff correspondence indicating that she was entitled to a benefit increase to credit her 1997 earning. (AR 209).  The Agency's correspondence apparently mislead Plaintiff to believe that she was entitled to continuing benefits despite her employment status.

   The ALJ correctly finds that even if the Agency is at fault in making the overpayment, it does not absolve Plaintiff of liability if she is not otherwise without fault.  (AR 253); 20 C.F.R. 404.507. However, the Agency's conduct in this case goes beyond making erroneous benefit payments.  The Agency misled Plaintiff to believe that she was entitled to benefits.  The Agency reviewed Plaintiff's case to determine if she was still eligible for benefits at least twice before the 1998 determination that Plaintiff was overpaid.  (See AR 193, 206).  Also, the Agency increased Plaintiff's benefits at least twice before the overpayment was discovered.  (Jt. Stip., Exhs. 4 & 5).  The Agency was repeatedly informed of Plaintiff's work status.  Further, letters increasing Plaintiff's benefits began, "We checked our records to see if any changes in your benefits are necessary." (Jt. Stip., Exhs. 4 & 5).  While the Agency's errors do not absolve Plaintiff from liability, the Agency's repeated confirmations that Plaintiff was entitled to benefits explains Plaintiff's state of mind and corroborates her contention that she was mislead by the agency.  Plaintiff believed she was entitled to benefits and, based on the correspondence from the Agency, her belief was reasonable.

Further, a person who accepts an overpayment in reliance on erroneous information from the Agency is deemed without fault. 20 C.F.R. § 404.510a. The ALJ must consider this regulation only when he either accepts, or does not explicitly reject, the plaintiff's contention of having been misled by the agency. Anderson v. Sullivan, 914 F.2d 1121, 1123 n.3 (9th Cir. 1990). Here, the ALJ speculates that "the [Agency's] continued interest in [Plaintiff's] work activity and earning should have triggered further consideration on her part about the validity of her benefit." (AR 251). Also, ALJ notes that she "finds it difficult to conceive that at least during this period of her dealings with [the Agency] [Plaintiff] would not have been informed of the trial work provisions." (AR 252). However, the ALJ did not expressly reject Plaintiff's contention that she received correspondence that led her to believe she was eligible for disability benefits. She merely intimated that Plaintiff should have been able to deduce that she was not due benefits because, along with all the correspondence confirming benefit eligibility, the Agency occasionally inquired about Plaintiff's work status. The ALJ failed to consider the application of § 404.510a and erred by finding Plaintiff "not without fault."

The ALJ's finding that someone of Plaintiff's education and intellect could be expect to know that she was not entitled to disability benefits is not supported by substantial evidence. (AR 255). The ALJ emphasizes Plaintiff's education, "strong intellect," and "mental acumen" throughout her decision. (AR 252, 253). However, the record does not support the ALJ's conclusions in this regard. The ALJ mistakenly describes Plaintiff as having a graduate degree. (See AR 251; see also Jt. Stip., Exhs. 1 & 4 (describing that the University

Extension course was a certificate program and did not require a college degree until 2004)).  There is no evidentiary support that Plaintiff was of particularly "strong intellect."   Plaintiff described her work as "sales," which does not necessarily require an advanced degree or a strong intellect.

The average lay person, in the instant situation, would have relied on the Agency's determination that benefits were due.  As previously discussed, the Agency reviewed Plaintiff's case to determine if benefits were still due at least twice before the 1998 determination that Plaintiff was overpaid.  (See AR 193, 206).  Also, the Agency regularly increased Plaintiff's benefits to credit her past earnings. (Jt. Stip., Exhs. 4 & 5).  Plaintiff's reliance on the Agency's determinations was reasonable.  Even a well-educated person of strong intellect would find it reasonable to rely on the Agency's numerous reassurances in this situation.

The ALJ's finding that Plaintiff knew or could have been expected to know that the acceptance of benefits was incorrect is not supported by substantial evidence.  As discussed above, a fault determination is highly subjective and highly dependent on Plaintiff's state of mind and the circumstances of Plaintiff's particular situation.  Harrison, 746 F.2d at 482 (citation omitted).  Here, Plaintiff relied on information provided by the Agency and was cooperative in reporting her employment status.   Plaintiff reasonably believed that she was entitled to benefits.  Further, the Agency's actions contributed to Plaintiff's belief that benefits were due.  Plaintiff must, therefore, be found "without fault" in her receipt of overpayments.

**B.   The Court Finds That Plaintiff Is Entitled To Waiver Because Recovery Of The Overpayment Would Be Against Equity And Good Conscience**

Once a plaintiff is found to be "without fault" in the overpayment, the Court must determine whether recovery of the overpayment would either defeat the purpose of the Social Security Act or would be against equity and good conscience.[2]  42 U.S.C. § 404(b).  The ALJ made no finding regarding whether recovery would be against equity and good conscience.  However, the Court finds that the issue can be resolved on the current record.

In <u>Quinlivan v. Sullivan</u>, 916 F.2d 524 (9th Cir. 1990), the Ninth Circuit discussed the meaning of the second part of the regulation, i.e. where recovery of the overpayment would be "against equity and good conscience."  In reviewing the legislative history behind the enactment of 42 U.S.C. §404(b), the Ninth Circuit observed that Congress intended to broaden the availability of waiver to claimants such as Plaintiff here:

> Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case.

---

[2]  As this Court finds that recovery of the overpayment would be "against equity and good conscience," the Court does not examine whether or not recovery of the overpayment would "defeat the purposes of the Social Security Act."

Quinlivan, 916 F.2d at 526.

Here, Plaintiff's total monthly income as of June 23, 2004, is comprised of her $914 in social security benefits. ((See Jt. Stip., Exh. 2). She has absolutely no other income or resources. (Id.; AR 54-61). Her monthly household expenses include her rent of $650 per month, electricity of $20 per month, gas of $ 40 per month, food of $150 per month and telephone of $ 10 per month. (Jt. Stip., Exh. 2). Her total monthly expenses are approximately $927 per month and exceed her monthly income. (Id.). Her illness continues to affect her such that she is disabled from employment.

Plaintiff is obviously living on the barest of finances. Reducing her monthly social security benefits by any amount will undoubtedly present a hardship for her, given the minimal budget Plaintiff lives on. This hardship seems particularly unjust, given the fact that the overpayment arguably resulted from confusion caused by the Agency.

In addition, Plaintiff was forthright and cooperative with the Agency. She repeatedly provided information about her employment. There is no evidence to suggest that Plaintiff was deceptive or evasive in any way. In this case, "equity and good conscience" favor the granting of a waiver.

In sum, the Court finds that Plaintiff was without fault in connection with the overpayment of benefits and that it would be against equity and good conscience to recover the overpayment. As such, Plaintiff is entitled to a waiver of recovery. Given the Court's

findings regarding Plaintiff's entitlement to a waiver, no remand is necessary here. <u>Villate v. Sullivan</u>, 862 F. Supp. 514, 519 (D.D.C. 1994)(where district court finds waiver, unnecessary to remand to the Secretary). This Court finds that Plaintiff is entitled to an order requiring the Agency to waive the recovery of the overpayment of $ 34,807.30 in disability benefits.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner. IT IS FURTHER ORDERED that Plaintiff is entitled to a waiver of the overpayment of social security benefits and no such overpayment shall be collected from Plaintiff. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 12, 2006.

_____/ S /_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE